Good morning. Good morning. It pleases the Court. I'm Gwen Freeman, and I'm appearing for appellant Yvette Green. I would like to reserve five minutes, please. Addressing first the punch-in issue and remembering that the issue is not whether some employees left after punching in. The issue is whether there was a company-wide FedEx policy about whether they could leave without punching in. I'd like to address more specifically the FedEx declarations, the employee declarations, because if you actually look at each of the declarations, and I read them over and over again over the weekend, it's really amazing how few of them say that an employee left after having punched in. If you actually read the declarations, what they really say are things like, well, you could go to your car to get something, but it was very rare that that happened, or I wasn't told one way or the other, or it was ambiguous about whether the declarant was talking about leaving the building or leaving the premises entirely. So is it your contention that your contentions are not controverted? No. I wouldn't go that far. But I would say that the evidence on our side is quite overwhelming, and it is certainly a common question of fact for the jury to decide. What the Court did here, of course, going straight to the merits, almost entirely ignoring our evidence, I think was an improper. Well, let's look at this, because I guess I'm trying to figure that out just a little bit. This is an abuse of discretion determination, is it not? It is, but- Well, I just want to make sure it is. So how does the Court abuse its discretion? The Court abused its discretion by- Not how did this. In general, how does a court, in making these determinations, abuse its discretion? Oh, in general, a court could abuse its discretion by improperly weighing evidence, perhaps, but that's not- If we look at the case law, how does the Court abuse its discretion in making these determinations? Maybe I'll prompt you. Okay. It seems to me that they abuse their discretion if they don't apply the correct legal standards. Would you agree? That's what I was trying to say. It seems to me they also, if they rely on clearly erroneous facts, that would also be, would it not? Correct. Okay, so let's look at the standards. What standard was improperly applied here? The standard that was improperly applied here was that the Court went directly to the merits and did not address the correct issue. Didn't the Court try its best, if you will, to look at those cases which outlined what it should do in this particular situation? Didn't it apply those cases? I don't think so, no. Well, why not? Because the- All you say is it went to the merits. It seemed to me that the law was, and that's why I'm trying to get you to, what was the law, what was the correct legal standard it should have applied, and then why not? I mean, I can see you're really on the clearly erroneous, if you will, reliance on facts. It seems to me, even starting with the affidavits you did, you're really talking about there was a clearly erroneous determination of facts. Because the Court said in Los Angeles, employees were free to use the time they clocked in for their own purposes. They could just not leave the facility. But in San Diego, the employees were free to leave the facility after clocking in. He said under 23b-3, that's just not enough. She did say that, yes, but the standard- She, sorry. That's okay. But the standard was that- I mean, she went to 23b-3. She passed the 23a standard of commonality. She went on to find what was the 23b-3 standard, which I think is the proper allocation of correct legal standards. She was looking at 23b-3. And she said in Los Angeles, they do one thing. In San Diego, they do another. There's no policy here. Correct, but whether there was a policy is not the question for the judge. The question is, can we- is the question whether there's a policy a common question? And it is a common question. Well, if one part of the corporation does it one way and one part of the corporation does it another, it's very hard to have a class action about how it's done. That's correct, but you know what we do not have here? We do not have any FedEx, 30b-6, or corporate employees saying anything like that, do we? Oh, just a minute. Let's look at Mr. Motter. I read Mr. Motter's. Can the employee leave the facility after clocking in, he said. If they have time to do so, I don't see why they wouldn't be able to. Actually, when I was a courier, I on one occasion would clock in, and there was an a.m. p.m. that was two blocks away. If I needed to go, I did. If I were hungry, I would leave the property to get something else to eat or drink. Then there was a question. Is there any directive or rule that you know of that whether they should or could leave punching in before they start? No, not that I've seen. Could an employer clock in and then go home for five hours before a shift as long as they came back and started the shift on time? I read what he said. I read what you said he said, but this is the testimony. Yes, Mr. Motter is the strongest declarant for FedEx on that premise. Well, you said all of the 30b-6 designees said that. No, that's not what I said. What I said, and this is true, is that they all agreed, including Mr. Motter, that the reason for the punch-in procedure was to ensure that the employee was on the premises. If you let them leave after they've punched in, that purpose cannot possibly be satisfied. Therefore, it is impossible for both things to be true. Let's look at Mr. Carlson's testimony. Where did you ever even ask him whether they could leave or not? The whole of his testimony was, they clock in to make sure they're present. He was never asked, can they leave? I went all through his testimony. He never said anything about that at all. Yes, he could say that. And if he did say, or FedEx is now saying that they could leave, in fact, if you read their employee declarations, the employee declarations do not in any respect support that. Well, the only reason I bring this up is that it seems to me that I've got to find that the facts that D.J. relied on here were clearly erroneous. And you were really big on the 30B6 designees, so I went through their testimony pretty carefully. I'm having a tough time seeing why the district judge clearly erroneously arrived at, at Los Angeles there's one policy and in San Diego there's another. Because the person who stated that there was a policy in San Diego, first of all, was not a corporate designee. That was Angela Funches, who is just one of the many declarants. And the fact that an employee, a few errant employees, may in fact leave after punching in does not make the policy, does not disprove the existence of the policy. Can you help me understand why an employee comes ahead of time? Are they disciplined that they don't come ahead of time? No, I don't believe that to be the case. So, if we rule in your favor on this, wouldn't that incentivize the employees to come in an hour early so they would get paid? No, because FedEx has already changed its policy. It changed it in 2006 and it could have had that policy all along. Now, they can't come in more than five minutes early. And that's the way it is. And that's perfectly good and we're glad that we achieved that for the FedEx courier class. And in this regard, I would also like to mention, because I think it segues in, the end of time class, the class with respect to, the same class, but with respect to end time. Nobody says that at the end of time, the employees are goofing off and killing time. Every employee that addresses the issue, in fact, seems to believe that they did get paid for that time. Which certainly indicates they were working. And I would refer you to Cynthia Brown, Michael Northington, Chuck Amaro, Margo Carson, Robert Quinn, Jasmine Carter, Lawrence Hearns, David Hirota, Clarissa Parker, Bobby Jones. They all thought they were getting paid. And this is because everybody really thinks, in their own mind, that when you punch in on a time clock, your time starts. And when you punch out, your time ends. That's what employees normally think, unless you tell them something very different. They may have told them that with respect to begin time, but not to end time. And in that regard, that alone would support class certification. You want to save a lot of time? I would like to. Thank you. We'll hear from counsel for FedEx. Good morning, Your Honor. If it pleases the Court, my name is Jeff Kelsey. I'm here on behalf of Federal Express. The district court properly followed this court's instructions when the case was remanded the first time. She applied the control definitions. She looked at the record. And she correctly concluded that neither of the classes that were identified by the plaintiff in this case could be certified, because the predominance element was not met. Individual inquiries overwhelm any common issues that arise in those two cases. In addition to the analysis that the district court did, it's clear that commonality also cannot be met in this case. And so to the extent the court were going to look at other factors under Rule 23, it's clear to me that the plaintiff has not produced common proof that FedEx controls the employees after clock-in. The only piece of proof they've got is the clock-in itself. And that leads me to the third point as to the first class, and that is simply clocking in does not equate to control without other factors or other indicia of control. And so for that reason, the first class was properly not certified. It seems to me that she is suggesting the district court somehow did not properly apply the correct legal standards. And I told her what I thought the district court went through. How do you respond? I do think the correct legal standard was applied, certainly. The district court followed this court's instructions. And keeping in mind, if the issue to be decided is, is the time compensable, then the only way we get to that conclusion is looking at the issue of control. Well, here, the only issue that goes to control is the clock-in. This idea that there was an unwritten policy that has been cobbled together through the 30B6 testimony, I think was pretty clearly refuted in the briefing where we showed, and as Your Honor pointed out, the actual testimony from the 30B6 witnesses when they were asked the specific question, are employees allowed to leave after clock-in? That difference in the fact that there's not a common policy is also reinforced by the fact that you have these declarants, I think 19 of them, and there's actually a chart that is a little bit handy to show who said what on the declarations. The declarants indicated that it was a mixed bag, quite frankly. At some locations, people thought that they could leave after clocking in. But that can't be true of the clock-out issue. The clock-out issue, I think, clearly just brings us back to the cases that this court referred us to initially, the Murillian and the Rudy cases, and it gets down to voluntariness. There's no indication in the record that employees are confused about the fact that when their shift ends, they are relieved of duty and can go and clock out. There's nothing in the record that indicates that they believe they have to hang around and do any post-shift work. And so to the extent anybody is working after that scheduled end time, the same as if they were working prior to the scheduled start time, those employees can go to managers and have time cards adjusted so that they're paid for that work. But to the extent they're not working, they are simply delayed. Maybe they go to the restroom or grab a Coke on the way for the ride home. To the extent they're delayed, it's a voluntary delay, and that's the key. I'm sorry. Well, I'm just saying, or maybe they're working. Maybe they have too much work to do and they can't get their work done unless they work overtime, which is probably what incentivizes people to stay. And to that point, Your Honor, employees are told that they're not supposed to work without being paid. So in that case, if they worked over their scheduled end time, they should go to the manager, have the time card altered so that they get paid for that additional work. There's no question, and nobody even disputes in this case. I mean, we're not talking about work. Work is always paid. It's always compensable. What we're talking about here is control time and whether or not the time in between the clock in and the scheduled start and the end time is compensable. Let me ask you about counsel makes good argument, I guess quite efficient argument, about this case was improperly decided on the merits. What is your response? I understand that point, Your Honor, and I would disagree that the district court actually went so far as to decide the control issue. I think the court took an appropriate look. Based on which case? Well, based on Marillion and Rudy, which this court referred the district court to. And so the emphasis there is plaintiffs have to show how they're going to prove the control issue at trial. They don't have to prove that they're going to win at the class certification, but they have to show that there is common proof that could be presented to a jury so that the jury could return a verdict in their favor. And in this case, there is no common proof because there's no common policy. So all we've got is the clock in, and that's simply insufficient under the case law. I mean, in Rudy, you know, we had, there was a whole list of indicia of control for those drivers. In Marillion, it was required to get on the buses and drive out to the fields. Here, it's voluntary whether you clock in early or not. So that's one key issue is the voluntariness. And then the lack of a policy that says you can't leave after you clock in equates to the fact that there's no common proof. They're not going to be able to prove that at trial. But you'd agree, wouldn't you, that it is a tough decision how far to go in these determinations as it relates to class certification, especially after Walmart, as you can't go to the end results. You can't decide this case on the merits in order to certify the class. So what is the, why did this judge make the right determination? Well, I think this is unique because the control issue has certain elements that would have to be proved on a class-wide basis. And so the court recognized that on the front end and said it's plaintiff's burden of showing what, how that common proof is going to come forth and prove control. So in that sense, I don't think, I mean, she didn't issue a summary judgment ruling. She didn't say plaintiff individually or any group of plaintiffs could never prove control. What she said was there's too many individual factors under 23B3 for us to certify this as a class. With respect to the meal break issue, I'm trying to analogize it to Amgen and the predominance question. It seems to me in that the discussion of the district judge may be a little too worried about the damages question as opposed to the common issue of policy. It's not necessary to prove that the company knew or should have known, just like it's not necessary to prove materiality as long as, if you can decide based on common evidence that the company knew or should have known and that looks like maybe you could from the data, then it should go forward as a class. There's a couple of problems with the meal break class. And to Your Honor's point, the common issue that the plaintiff tries to identify is the scan data. And we've done a lot in the briefing to show why the scan data is actually not common proof for this class of individuals. Because many, if not most, of the class members didn't use scanners. That was not their job. I mean, you're talking about people who drove trucks. You're talking about people who sorted packages. You're talking about clerical staff. This is a class of 14,000 people in about 140 locations throughout the state of California. And all those locations, they were different sizes, different responsibilities. And so to say that the scan data is common across the class is simply inaccurate. And so that's one of the things. They also want to use the scan data on Your Honor's point, which is the knew or should have known. But there's really no linkage of that. I mean, it's sort of a logical, well, the scan data's there, therefore FedEx knew or should have known. And in reality, to compare that scan data on a daily basis to manual time cards is simply beyond what is required of the employer. Under the Brinker decision, FedEx is not required to ensure that the breaks are taken. FedEx is only required to provide the opportunity for the breaks. And it's clear from the record, I believe, that FedEx did that. We provided the breaks. But we're not required to police them and make sure. I mean, this is not a factory where we can close down the line, send everybody to the break room and say, take your break. And you look over in the corner and there's somebody out there, you know, painting a widget. And you go, well, he's working through his break. That's not the way this system works. And so we provide the breaks. We have correct policies. We tell people to take breaks. And, you know, quite frankly, we discipline them if we find out they are working through breaks. But there's no common proof that FedEx knew people were wholesale not taking breaks. And so for that reason, that class was also properly not certified. Could it be an abuse of discretion for the district judge not to narrow the class? I mean, I think he or her, I'm sorry, her main concern here is that the class is just too broad, the clean class. So you could say, well, we can't have a statewide class of all these categories, but we can have a statewide class of everybody who scans bags, boxes. Honestly, Your Honor, this is an old case. It was filed in 2008. It dates back to time periods of 2003 to 2006. It's come up on appeal once. The plaintiff has had ample, and I say that only to say, the plaintiff has had ample time to gather evidence and construct a class that could be certifiable. It is not the trial judge's job or requirement to find a class that we can certify. And so, you know, I think at this point, certainly in the litigation, the plaintiff has tried to identify the best class that they can, and it's simply not good enough. Those choices were made long ago, and in fact, they've changed. The first class, as you will recall, was much different than the two classes we ended up with here today. And so the plaintiff has tried to narrow the class, has tried to come up with something certifiable, and just simply was not able to provide sufficient common proof to do so. As to the class representative issue, I'm understanding that you both agree that the district court really didn't make a definitive determination of that issue. That is correct, Your Honor. The court was clear that the decision was based on lack of predominance and individualized inquiries, overwhelming common issues. We did make the point in the brief, we do think she's not a proper class representative because an analysis we did showed that she didn't have any scans that occurred. But the district court really didn't go there. Correct. And so, therefore, if we had to take a class representative, we'd probably have to send it back. I don't think that. Because I'm really worried that there's not evidence that upon which the district court had in front of it and or on which your opponent had a chance to talk that the district court made any determination. The district court did not make that determination. That is absolutely true. I have no other questions. Do you have any other questions? The court has no other questions. Thanks very much. Appreciate it. We'll have rebuttal. Thank you. So on the issue of common proof, the common proof will be very simple, and it is common. One, FedEx admits that every single one of its hourly employees must punch in and punch out. It is a system different from the scheduled start time and the scheduled end time. Two, they admit, and it is truly undisputed, that the reason for that is to ensure that the employee is on the premises. From that, a jury could conclude that. I'm not sure that's undisputed, that it's on the premises. That is undisputed. That is what their 30-plus experiences say. It's my understanding that they said to make sure they're present at the time they're supposed to work. Well, there's no ñ I mean, a jury could certainly find that if you let somebody. I mean, on the premises is the question. Right. But if you let somebody punch in and then go someplace else. Well, we have all kinds of proof that they do go other places. No, we don't. We have two people. We have two people. Everybody else, if you look carefully at their declarations, they're talking about the time before they punched in. And that is a very different situation. With respect to the break scans, my worthy opponent has indicated this is not a factory. They cannot shut it down. Well, but they did shut it down. In 2006, they went to the very, very simple solving solution of if you enter your 13, 14 break time, you cannot scan. And therefore, there is no further issue, at least not the same issue. So they always had the ability to do that, and they always had the ability to monitor that. And with respect to the argument that there's no evidence that people work, I mean, I did read you all the names of every declarant. Every declarant who touches the issue says, I believed I was being paid to my actual punch out, Margo Carson. I was being paid from punch in to punch out. Robert Quinn, if any work is done after punch out, they have to punch back in, which indicates that he believes that the time after scheduled end time and before punch out should be paid, or otherwise, why would you have to punch back in? They all think that. They all believe that they're wrong because FedEx didn't pay them for that time, but they're busily working and then waiting until they punch out thinking they are going to be paid when, in fact, they were not. And that is, as I say, alone, a perfectly viable class and appropriate for class certification. Your opposition, though, seems to say that they did know these rules about not working on their break time and not working after their. No. Clearly, I think if you read the declarations, it's quite clear that most FedEx employees knew they were not going to get paid if they arrived half an hour early and waited around and read the paper and did other time killing type activities, which I would also argue is a failure to apply the proper standard because that is not using the time to their own purposes. But the end time was really not addressed, and it wasn't until I did a very close analysis of each one of these declarations when I found that, in fact, every declarant, every single one who talked about it, thought that at the end of the day, if they worked a little extra and left 15, 20 minutes, they were going to get paid. And in fact, that didn't happen. So that is what I have to say in rebuttal. Very good. Thank you very much. Thank you very much. Thanks to both counsel for argument. Very helpful. We will now hear argument in the final case of the day.
judges: Lefkow, Smith, Smith